**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. J. LYNN ROYCROFT<br>8811 Township Rd. 34<br>Galion, OH 44833-9083<br><br>Relator,<br><br>v.<br><br>The Geo Group Inc.<br>dba Abraxas Ohio<br>2775 Ohio 39<br>Shelby, OH 44875<br><br>and<br><br>Cornell Companies Inc.<br>c/o Corporate Creations Network, Inc.<br>119 E. Court Street<br>Cincinnati, Oh 45202<br><br>And<br><br>Cornell Companies, Inc.<br>dba Cornell Abraxas Ohio<br>c/o Corporate Creations Network, Inc.<br>119 E. Court Street<br>Cincinnati, Oh 45202<br><br>and<br><br>Cornell Abraxas Group, Inc.<br>c/o Corporate Creations Network, Inc.<br>119 E. Court Street<br>Cincinnati, Oh 45202<br><br>Defendants, | CASE NO.: 1:14 CV 1808<br><br>JUDGE **JUDGE OLIVER**<br><br>**MAG. JUDGE BAUGHMAN**<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. Section 3729 et seq.] AND FOR MONEY DAMAGES<br><br>FILED IN CAMERA<br><br>UNDER SEAL<br><br>JURY TRIAL DEMANDED |

FILED
2014 AUG 15 PM 3:07
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO

# COMPLAINT

1.  This lawsuit is based on a scheme by the Defendants to defraud the United States by knowingly submitting false fraudulent charges for payment under the Medicaid program. These acts constitute violations of the federal False Claims Act, 31 U.S.C. §3729 et. seq. ("FCA").

2.  Relator, Roycroft, on behalf of and in the name of the United States of America sues to recover treble damages and civil penalties arising from the submission of false Medicaid claims by Defendants, Geo Group Inc., dba Abraxas Ohio, Cornell Companies Inc., dba Cornell Abraxas Ohio, Cornell Abraxas Group, Inc.. Relator brings this civil action under the qui-tam provisions of the False Claims Act, and alleges:

## Jurisdiction and Venue

3.  This court has jurisdiction over this Complaint under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331 and § 1345.

4.  Venue in the Northern District of Ohio, Eastern Division is proper under 28 U.S.C. § 1391(c) and 31 U.S.C. § 3732(a) because the Defendants transact business within this District, and the acts proscribed by the FCA occurred within the District.

## Parties and Other Entities

5.  Relator Roycroft, is a citizen and resident of the United States, a former employee of Defendants.

6.  Defendant The Geo Group, Inc., a Florida corporation, is headquartered in Boca Raton, Florida. The Geo Group, Inc. describes itself as one of the world's largest correctional and detention organizations, including residential treatment services for youths. One of those residential treatment centers is Abraxas Ohio, at 2775 State Route 39, in Shelby, Ohio, according

to the Abraxas website. Abraxas Ohio is not a separate business entity registered in the State of Ohio. The Geo Group, Inc. has been licensed to do business in Ohio since 1997. On August 12, 2010 The Geo Group merged with Defendant Cornell Companies, Inc..

7. Defendant Cornell Companies, Inc., is a Delaware corporation, which was headquartered in Houston, Texas prior to its merger with The Geo group. Cornell Companies Inc. does business as Cornell Abraxas Ohio at its Abraxas Youth and Family Services program at 2775 State Route 39, in Shelby, Ohio. Neither, Cornell Abraxas Ohio nor Abraxas Youth and Family Services are separate business entities registered to do business in the State of Ohio.

8. Defendant Cornell Abraxas Group, Inc. is a Delaware corporation, doing business at 2775 State Route 39, in Shelby, Ohio. Cornell Abraxas Group, Inc., formerly known as Abraxas Group, Inc., is a foreign corporation licensed to do business in the State of Ohio since 1997.

9. This action is not based on public disclosure of information within the meaning of 31 U.S.C. §3730(e)(4)(A). The relator has direct and independent knowledge, within the meaning of 31 U.S.C. §3730(e)(4)(B), derived through her interactions with Abraxas Ohio.

## Factual Allegations

10. The Defendants operate a residential drug and alcohol treatment facility, certified or accredited by the Ohio Department of Alcohol and Drug Addiction Services (ODADAS), primarily for adjudicated delinquent and/or dependent males under the age of 21, with substance use/abuse issues, behavioral problems and/or sexual abusive behavior.

11. Relator, Roycroft, was employed by Cornell Abraxas Group, Inc. as a Clinical Supervisor at the Shelby, Ohio residential treatment facility. Roycroft worked as a first floor

supervisor at Abraxas on May 28, 2008 and left her employment on March 6, 2009 because of her concerns regarding the operation of the treatment facility.

### The Medicaid Program

12. The Medicaid Program, as enacted by Title XIX of the Social Security Act of 1965, 42 U.S.C. §1396, et seq., is a joint federal-state program that provides health care benefits for certain groups, primarily indigent and disabled individuals. The federal Medicaid statute establishes the minimum requirements for state Medicaid programs to qualify for federal funding. 42 U.S.C. §1396a.

13. The Medicaid statute requires each participating state to implement and administer a state plan for medical assistance services which contains certain minimum criteria for coverage and payment of claims. 42 U.S.C. §§1396, 1396a.

### Applicable State Law

14. Abraxas Ohio is licensed as a Children's Residential Center by the Ohio Department of Job and Family Services (ODJFS). ODJFS oversees the state's Medicaid program.

15. Defendants' officers, managers, and employees knew that the treatment of Medicaid youth for substance use/abuse at Abraxas Ohio was governed by regulations promulgated by ODADAS. O.R.C. § 3793.06.

16. The state minimum requirements for certification of an alcohol and drug addiction services residential treatment program are set forth in O.A.C. §3793:2-5-01. This section provides that residential treatment programs must provide:

> (C) (1). Structured alcohol/drug addiction services and activities for at least thirty hours for adults and twenty hours for adolescents per seven day week.
> (2). Individual and/or group counseling services shall be provided at least five days per week....

(E) Time for meals, unstructured activities, "free time," time spent in attendance of self help groups, such as alcoholics anonymous or narcotics anonymous, is not included in the minimum hours of services and activities for a residential treatment program.

(F) Interpersonal and group living skills shall be promoted in residential and halfway house treatment programs. Clients shall be transitioned to the general community for education, job training, job interviews, employment stabilization and obtaining alternative living arrangements.
   (1) A program may require clients to perform tasks of a housekeeping nature without compensation as specified within program guidelines.
   (2) Housekeeping tasks shall not be considered as meeting the alcohol/drug addiction services and activities requirement.

(G) Each residential ... treatment program shall be organized and clinically managed to provide non-medical community residential level of care.... It is a planned program of professionally-directed evaluation, care and treatment for the restoration of functioning for persons with alcohol and other drug problems and/or addiction....

(J) Each residential and halfway house treatment program shall provide, at a minimum, the following alcohol and drug addiction services at the program site in accordance with rule 3793:2-1-08 of the Administrative Code:
   (1) Assessment services,
   (2) Individual and group counseling services,
   (3) Crisis intervention services, and
   (4) Case management.

17. Assessment services, as provided in O.A.C. §3793:2-1-08(K), "means the evaluation of an individual to determine the nature and extent of his/her abuse, misuse and/or addiction to alcohol and/or other drugs. Assessment services shall consist of time limited, structured, face-to-face sessions." Further, assessments must include information related to eighteen categories in O.A.C. §3793:2-1-08(K)(3).

18. Individual counseling, as provided in O.A.C. §3793:2-1-08(N), "involves a face-to-face encounter between a client or client and family member and a counselor. Individual counseling means the utilization of special skills to assist an individual in achieving treatment objectives through the exploration of alcohol and other drug problems and/or addiction and their ramifications, including an examination of attitudes and feelings, consideration of alternative

solutions and decision making and/or discussing didactic materials with regard to alcohol and other drug related problems."

19. Group counseling, as provided in O.A.C. §3793:2-1-08(O), "means the utilization of special skills to assist two or more individuals in achieving treatment objectives. This occurs through the exploration of alcohol and other drug problems and/or addiction and their ramifications, including an examination of attitudes and feelings, consideration of alternative solutions and decision making and/or discussing information related to alcohol and other drug related problems.... Group counseling shall be documented per paragraphs (M) and (N) of rule 3793:2-1-06 of the Administrative Code. Group sessions, which focus on helping individuals increase awareness and knowledge of the nature, extent and harm of their alcohol and drug addiction ... shall be documented per paragraph (O)(1) of rule 3793:2-1-06 of the Administrative Code ... [and] shall not eliminate the requirement for group counseling in outpatient and residential treatment."

20. "Crisis intervention service is a face-to-face interaction with a client that is in response to a crisis or emergency situation experienced by themselves, a family member and/or significant other. It begins with an evaluation of what happened during the crisis and the individual's response or responses to it .... Information about the individual's strengths, coping skills, and social support networks is also obtained." O.A.C. §3793:2-1-08(L).

21. "Case management services means those activities provided to assist and support individuals in gaining access to needed medical, social, educational and other services essential to meeting basic human needs." O.A.C. §3793:2-1-08(M). The regulation also provides that transportation and waiting with clients for appointments does not constitute case management.

22. These treatment services must be documented by written progress notes. O.A.C. §3793:2-1-06 provides:

> (O) Progress notes shall be written to reflect the implementation and evaluation of ITPs for clients admitted to programs. Progress notes are required to include sufficient content to justify the client's continuing need for services. Each service listed in rule 3793:2-1-08 of the Administrative Code delivered to the client, with the exception of urinalysis, shall be documented as defined is this rule in the client's record with either a service level, daily or weekly progress note....
> (1) Progress notes shall indicate progress the client is making towards achieving the goals and objectives that are identified in the individualized treatment plan.
> (P) Service level progress notes shall include, at a minimum, the following:
> (1) Client identification (name and/or identification number).
> (2) Date of service contact or service delivery.
> (3) Length of time of service contact or service delivery (calculated by the number of hours, minutes and/or start and ending time of service delivery).
> (4) Type of service (for example, case management, individual counseling, group counseling, crisis intervention, etc.).
> (5) Summary of what occurred during the service contact or service delivery.
> (6) Date, original signature and credentials (registration, certification and/or license) of the staff member providing the service.
> (R) Daily or weekly progress notes shall include, at a minimum, the following and may include checklists:
> (1) Client identification (name and/or identification number;
> (2) For daily progress notes, the calendar day the progress note is applicable to;
> (3) For weekly progress notes, the weekly period the progress note is applicable to. (must be a continuous 7 day period);
> (4) An overall summary of the client's treatment progress during the note period.
> (5) Date, original signature and credential (registration, certification and/or license) of the staff member writing the daily or weekly progress note. The staff member must be qualified, in accordance with rule 3793:2-1-08 of the Administrative Code, to provide all of the services documented in the daily or weekly service log.
> (S) Client records utilizing daily or weekly progress notes pursuant to paragraph (P) of this rule must contain a service log that includes, at a minimum, the following which may include checklists:
> (1) Date of service for each service provided during the day or week.
> (2) Type of services (for example, case management, individual counseling, group counseling, crisis intervention, etc.) provided during the day or week.
> (3) Length of time of each service contact or service delivery (calculated by the number of hours, minutes and/or start and ending time of each service delivery.
> (4) The signature and license of each clinician who provided services during the day or week.

23. The Ohio Chemical Dependency Professionals Board establishes and administers the process for licensure or certification of chemical dependency counselors and assistants. O.R.C. §4758.24; O.A.C. §4758:4-01.

24. Chemical dependency counselor assistants (CDCA) must complete a formal application process with the Board and at a minimum must have forty hours of approved training every two years. R.C. §4758.43; O.A.C. §4758:4-01.

25. To be certified as a CDCA, the forty hours of approved training, under O.A.C. §4758:5-01(A) must cover the following content areas:

(1) Addiction knowledge (five hours)
(2) Treatment knowledge (nine hours)
(3) Professionalism (six hours)
(4) Evaluation (three hours)
(5) Service coordination (four hours)
(6) Documentation (three hours)
(7) Counseling
(a) Individual (five hours)
(b) Group (five hours)

### Violations of the False Claims Act- False Records or Statements

26. Beginning on some unknown date before May 28, 2008, continuing through March 6, 2009, and continuing through some unknown date thereafter, Defendants through their managers, and employees, knowingly presented, or caused to be presented, to ODJFS, false or fraudulent claims for payment of expenses related to the drug and alcohol treatment of delinquent and/or dependent male youths at the Abraxas Ohio residential treatment facility.

27. These claims were false or fraudulent in at least one or more of the following ways:

a. Defendants falsely and fraudulently represented that structured alcohol/drug addiction services and activities were provided for at least twenty hours per week; O.A.C. § 3793:2-5-01(C)(1).

b. Defendants failed to provide evening services and activities;

c. Defendants fraudulently included time for meals, unstructured activities, "free time," and time spent in attendance of self-help groups, in the minimum hours of services and activities; O.A.C. §3793:2-5-01(E).

d. Defendants fraudulently included time for housekeeping tasks in the minimum hours of services and activities; O.A.C. §3793:2-5-01(F) (2).

e. Defendants falsely and fraudulently documented group counseling; O.A.C. §3793:2-1-06.

   1. Defendants provided inaccurate information regarding the length of service provided;

   2. Defendants provided inaccurate information regarding the service provided;

   3. Defendants provided inaccurate information regarding the staff providing the service;

   4. Defendants permitted staff to use prewritten "cut and paste" notes, notes not timely written, and notes signed by persons not providing the service; O.A.C. §3793:2-1-06.

   5. Defendants falsely and fraudulently required missing progress notes to be completed. O.A.C. §3793:2-1-06.

f. Defendants falsely and fraudulently represented the qualifications and training of CDCA personnel. O.A.C. §4758:4-01 and O.A.C. §4758:5-01.

### **Knowingly**

28. "Knowing" and "knowingly" under the FCA, means that a person (1) has actual knowledge of the information, (2) acts in deliberate ignorance of the truth or falsity of the information, or (3) acts in reckless disregard of the truth or falsity of the information. Proof of a specific intent to defraud is not required. 31 U.S.C. §3729(b).

29. Defendants actions were knowing as shown by the following facts, among others:

a. The hour long evening group counseling session was frequently scheduled for 5:30 pm when dinner was at 6:00 pm..

b. Roycroft attended a training session shortly after beginning her employment at Abraxas Ohio. The session was scheduled for 3 hours. The program lasted 15 minutes. Training provided at Abraxas Ohio for CDCA lacked substance and failed to fulfill the 40 hours required hours for CDCA. Ohio Abraxas had no training program curriculum in place for training its CDCA employees before Roycroft created one in September 2008.

30. Defendants actions were knowing as shown by the following emails discussing the progress notes:

a. On January 23, 2009, Rebecca Mascazine sent out an email to Lynn Roycroft, Shannon Wolford and Judith Harley.

> Subject "Tagging Notes"
> Importance "High"
> Hello Everyone,
> I just entered all of November's TCRXI, TCINB and TINCO (Life Space Interviews) from the dates of 11/01/08-11/30/08. Can each of you please review these dates and finish tagging and signing what notes are still out there in the grid? There are other notes out there besides these. I would like to take at least the 1st – 15th of November over for billing by Monday. Please let me know when these are done... Ex. 1.

b. On January 26, 2009, Lynn Roycroft sent Rebecca Mascazine, Shannon Wolford and Judith Harley a response to Mascazine's email. Roycroft copied Todd Fry, Interim Clinical Director.

> I have all the notes tagged and signed in November I can. There is a problem with some notes being unacceptable because they are cut and paste, wrong topics, Staff no longer here or woefully inadequate. I have requested clarification from Todd as to how to proceed. Lynn. Ex. 2.

c. On January 30, 2009, Todd Fry, Interim Clinical Director, sent Bruce Tessna, Director of the Abraxas Ohio facility, and Erich Dumbeck an email, in response to Lynn Roycroft's email.:

> I'm forwarding this on to both of you because I don't know how you want to proceed with this. The issues here include: It is fraudulent when staff write the same note on every client (this was clearly stated as so by Tammy Tingle, an Investigator for the State of Ohio Counselor, Social Worker, Marriage and Family Therapist Board during an ethics workshop I attended in October). It jeopardizes Lynn's, Judie's, etc. license if they sign off on the same.
> When staff are going back and writing a note for a group that occurred one month, two months, etc. ago it is similarly problematic unless they took notes during group and can show proof of this—otherwise, they're inventing information, which is fraudulent documentation.
> It is the same staff members –e.g.., Becca Wagers – who are repeat offenders in these areas— I know that Lynn has kept good records of whom she's written up because of documentation issues, if you need to discuss this further with her. I'm sure Shannon and Judie could provide a similar list. In short, the same people have been supervised around what's acceptable, and what's unacceptable, documentation numerous times, yet continue to ignore what they've been asked to do. Todd A. Fry, MSW, LISW-S, Interim Clinical Director. Ex. 2.

d. On February 4, 2009 Rebecca Mascazine sent out an email to Erich Dumbeck; Derrick March and copied Lynn Roycroft and Inez Ferrante.

> I just spoke to Lynn and we have confirmed again that these notes were not touched over the weekend, which makes me believe that the other notes for November were not touch either (the list that I gave you). All the notes have the client name "Roy" in the entire note and they are all the same from Dashawn's. Becca's note is the same as another note in her group.
> I don't mean to be such a pest but these notes are holding up billing for November 1- 15. Ex. 3.

e. On February 5, 2009 Jon Pasko sent Todd fry and staff an email:

    Subject: missing note list as of 2-5-09
    Good job to everyone for not having any missing notes from yesterday. Please keep working on getting these missing notes done, specially those over a month old. Ex. 4

f. On February 17, Bruce Tessna emailed Lynn Roycroft, James Back Sr., Kyle Nickell

   and copied Thomas Standish and Erich Dumbeck.

    It was brought to my attention that there has been some challenges ensuring the groups in the morning and evening start on time and run the entire scheduled time. The team indicated that these issues could be addressed with some minor changes in the 1st floor schedule. The team also indicated that they will provide you with suggestions.
    I would like a response on what your plan is to ensure that the groups start on time and run the entire scheduled time. Your plan needs to include what changes you will be making and how you will monitor to ensure that the staff are following through. Please provide me with a response before the start of CLM. Ex. 5.

g. On February 18, 2009, Jon Pasko emailed, Judith Harley, Lynn Roycroft, Shannon

   Wolford copying Thomas Standish:

    Subject: Tagging Notes
    Once you guys are up to date on your tagging please stay one business day behind so that I am able to check missing notes. This will help you guys out by allowing me to look for wrong duration times and activity codes. There have been some issues with notes being tagged that are not correct. If you have any question regarding this or any questions at all. Please feel free to call Rebecca or I at any time. Ex. 6.

h. On February 20, 2009, Jon Pasko emailed Rebecca Mascazine, copying Thomas

   Standish and Lynn Roycroft:

    On the 18th of February there are 6 notes by John Patrick and 5 notes by Mike Bussert for TAGRP's. These notes are tagged with a client duration of 50. If that is the actually duration then the activity needs to be changed to TSIOP along with the evening note changed to a TSIOP. If the duration is supposed to be one hour (which the note infers). Then the duration needs to be changed to 1.00 and the activity left the same. Ex. 7.

31. Defendants practices constituted a substantial failure to deliver the services to the residents for which it was paid by Medicaid.

32. Defendants have knowingly violated 31 U.S.C. §3729 by knowingly presenting false or fraudulent claims causing the United States to be damaged in an amount to be determined.

## Prayer for relief

WHEREFORE, Relator Roycroft, acting on behalf of and in the name of the United States, demands and prays that judgment be entered in favor of the United States against Defendants and that the Court order, that Defendants pay the United States triple damages, plus civil penalties of $5500-$11,000 for each false claim; for costs of this civil action; and for such other relief the Court deems just and equitable .

Respectfully submitted,

_____
Warner Mendenhall (0070165)
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160
Fax 330.762.9743
warnermendenhall@hotmail.com
Attorney for Relator

## DEMAND FOR JURY TRIAL

Relator Lynn Roycroft demands this case be tried before a jury.

_____
Warner Mendenhall (0070165)