# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO (CLEVELAND)

UNITED STATES OF AMERICA, ex )
rel., J. LYNN ROYCROFT. )
 )
       Realtor, )     CASE NO.:  14-cv-01808
 )
          v. )     JUDGE SOLOMON OLIVER,  JR.
 )
GEO GROUP, INC. et. al. )
 )
       Defendants. )

## BRIEF IN SUPPORT OF GEO GROUP DEFENDANTS' MOTION TO DISMISS RELATOR PLAINTIFF'S FIRST AMENDED COMPLAINT

Peter J. Ennis
**Buchanan Ingersoll & Rooney PC**
One Oxford Center
301 Grant Street, 20th Floor
Pittsburgh, PA  15219-1410
Phone:  412-562-8800
Fax:  412-562-1041
peter.ennis@bipc.com

Dated:  September 27, 2016           *Attorney for Geo Group Defendants*

# TABLE OF CONTENTS

I.     Introduction ................................................................................................1

       A.     Statement of Alleged "Facts" ........................................................1

       B.     The Amended Complaint ................................................................5

II.    Statement of the Issues ................................................................................7

       A.     Should Count I of the Amended Complaint be dismissed because it fails to meet the pleading standards under Federal Rules of Civil Procedure 8(a) and 9(b) and substantive requirements, including the "demanding" materiality requirement, for claims under the False Claims Act? ................................................................................7

       B.     Should Count II of the Amended Complaint be dismissed because it fails to plead the elements of a "reverse false claim" and does not track the correct (pre-Fraud Enforcement and Recovery Act amendment) standard? ................................7

III.   Summary of Argument ................................................................................7

IV.    Standard of Review ......................................................................................8

V.     Argument ......................................................................................................9

       A.     Count I of The Amended Complaint Must be Dismissed Because Roycroft Fails to State a Claim or Sufficiently Allege that Abraxas Violated Sections 3729(a)(1) or (2) of the Pre-FERA FCA or the Post-FERA Version Thereof. ...............................9

       B.     Count II of the Amended Complaint Must Be Dismissed Because Roycroft Fails to Sufficient Plead Essential Elements of a "Reverse False Claim" ..........................15

VI.    Conclusion ..................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Am. Sys. Consulting, Inc. v. Mantech Advanced Sys. Int'l*,
   600 Fed. Appx. 969 (6th Cir. 2015)...................................................................14

*American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*,
   190 F.3d 729 (6th Cir.1999) ............................................................................16

*U.S. ex rel. Antoon v. Cleveland Clinic Found.*,
   788 F.3d 605 (6th Cir. 2015) ...........................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................8

*United States ex rel. Bledsoe v. Community Health Systems, Inc.*,
   501 F.3d 493 (6th Cir. 2007) ...........................................................................10

*United States ex rel. Dennis v. Health Mgmt. Assocs., Inc.*,
   No. 3:09–cv–00484, 2013 WL 146048 (M.D. Tenn., Jan.14, 2013).......................12

*United States Ex. Rel. Doe v. Jan-Care Ambulance Serv.*,
   --- F. Supp. 3d ---, 2016 WL 2843909 (E.D. Ky. May 11, 2016)....................12, 13

*United States ex rel. Dresser v. Qualium Corp.*,
   2016 WL 3880763 (N.D. Cal. Jul. 18, 2016)........................................................15

*United States ex rel. Griffith v. Conn*,
   117 F. Supp. 3d 961, 982-83 (E.D. Ky. 2015) .................................................10, 12

*Grindstaff v. Green*,
   133 F.3d 416 (6th Cir. 1998) .............................................................................8

*United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*,
   5:13-cv-2145, 2015 WL 7575937 (N.D. Ohio Nov. 25, 2015) ...............8, 9, 16, 17

*United States ex rel. Prather v. Brookdale Senior Living*,
   No. 3:12–CV–00764, 2015 WL 1509211 (M.D. Tenn. Mar. 31, 2015)..........11, 12, 13

*Sanderson v. HCA-The Healthcare Co.*,
   447 F.3d 873 (6th Cir. 2006) ..........................................................................9, 10

*United States ex rel. Sheldon v. Kettering Health Network*,
    816 F.3d 399 (6th Cir. 2016) ..........................................................................9, 10

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
    532 F.3d 496 (6th Cir. 2008) ..............................................................................10

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) ................................................................................9

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
    579 U.S. ___, slip op. (2016) ........................................................................14, 15

*Yuhasz v. Brush Wellman, Inc.*,
    341 F.3d 559 (6th Cir. 2003) ................................................................................9

**Rules**

Fed. R. Civ P. 8(a)(2) ..............................................................................................8

Fed. R. Civ. P. 9(b) ..........................................................................7, 8, 9, 11, 13

Fed. R. Civ. P. 12(b)(6) ......................................................................................8, 9

**Statutes**

31 U.S.C. § 3729(a)(1) & (2) ............................................................................6, 10

31 U.S.C. § 3729(a)(1)(A) ....................................................................................11

31 U.S.C. § 3729(a)(1)(A) & (B) ............................................................................6

31 U.S.C. § 3729(a)(1)(G) (2009) ....................................................................6, 15

31 U.S.C. § 3729(b)(3) ..........................................................................................17

31 U.S.C. § 3730(b)(4)(B) ......................................................................................6

I.     **INTRODUCTION**

Five and a half years after she left the employment of Cornell Abraxas Group, Inc. and the other defendants (collectively, "Abraxas" or "Geo Group"), relator Plaintiff J. Lynn Roycroft ("Roycroft") filed a lawsuit alleging that Abraxas violated the False Claims Act by submitting false claims for payment pursuant to the Medicaid program.  *See* Amended Complaint (Doc. #11, "Am. Compl.") ¶¶ 1, 2 and 68.  Though she worked for Abraxas as a clinical supervisor for just under ten months and she never actually submitted any bills to Medicaid for payment, Roycroft claims to have uncovered a fraudulent "scheme" to defraud the Government.  She claims not only that this scheme existed during her short tenure at Abraxas, but also—somehow—that it continues to this day.  Roycroft's own Amended Complaint, however, shows that these sweeping allegations have no factual underpinning.  Instead of specifically pleading instances of fraudulent bills that were submitted to and paid by the Government, as she must, Roycroft alleges a series of grievances about the supposed administrative code violations and her difficulties as a supervisor.  Roycroft never ties any of these grievances to any specific bill so as to allege with specificity who submitted the bill, what was represented (and billed), where or when the bill was submitted and—critically—how the bill became fraudulent.  Instead, she pleads herself out of court by alleging that she "ensured" Abraxas met medical documentation requirements and that senior management at her facility responded to issues she raised about services (since she had no role in billing) by expressing total agreement with her.

A.     **Statement of Alleged "Facts"**

Abraxas is a provider of children's residential services and operates a Children's Residential Center in Shelby, Ohio ("Center" or "Abraxas Ohio").  (Am. Compl. ¶ 11).  At the time of the events alleged, the Center was certified or accredited by the Ohio Department of

Alcohol and Drug Addiction Services (ODADAS), primarily to serve youth suffering from substance abuse and other issues. (*Id.* at ¶ 12). Roycroft was employed as a Clinical Supervisor at the Center for less than 10 months, from May 2008 to March 2009. (Am. Compl. ¶ 13).

> 1. <u>Roycroft alleges three sets of grievances, which she styles as "fraud."</u>

As alleged in the Complaint, Roycroft's "scheme" consists of grievances about Defendants' alleged failure to follow Ohio's statutes and regulations for certain residential treatment centers. Most of the alleged failures are too conclusory and lacking in detail (i.e., by whom, when, how, etc.) to be discussed further. (*Id.* at ¶ 48). The few grievances for which Roycroft does more than simply parrot or cite to regulatory language fall into three categories:

> i. *Training*

Roycroft alleges that the Abraxas' chemical dependency counselor assistants ("CDCAs") were not adequately trained. (Am. Compl. ¶ 51). Roycroft apparently bases this allegation on her own critique of the CDCAs under her charge and the fact that in her 10 months of employment she attended a total of two in-house training sessions which did not run for their full allotted time. (*Id.* at ¶¶ 52-55). Roycroft does not state how the two allegedly shortened training sessions led to anyone being uncertified or unable to provide services.

> ii. *Progress notes*

Roycroft's second set of grievances appears to allege that the CDCAs failed to properly document their services through progress notes. (Am. Compl. at ¶ 61). Although Roycroft avers she reviewed the progress notes "to ensure they met requirements," she "observed that progress notes were often identical, vague and lacked sufficient detail, and occasionally would reflect the wrong name of a client" or contain inconsistencies or "cut and paste" descriptions. (*Id.* at ¶¶ 59, 61). She complains that she experienced "significant difficulties" in getting her subordinates to properly document services. (*Id.* at ¶ 60).

Roycroft complains that the Center's Billing Department would send her follow-up memos if she did not sign-off on (or "tag") progress notes for "such services." (Am. Compl. at ¶ 62). Unless the progress notes are tagged, nothing can be submitted to billing. (Am. Compl. at ¶¶ 77(c)(1),(4)). Roycroft alleges that in January 2009, she "refused to sign off on certain progress notes and reported to her clinical director that "signing off on or creating progress notes months after the fact was improper under the circumstances." (*Id.* at ¶ 64). As demonstrated by emails cited in the Amended Complaint and discussed below, her clinical director agreed. *Id.* Roycroft does not identify any specific progress notes which were somehow fraudulent *and* "tagged" *and* submitted to Medicaid for payment.

### iii.  *Counseling*

Roycroft's third set of grievances alleges broadly that "Defendants billed for three hours of clinical services for each adolescent each day," including "morning group," "evening group," and "closure group." (Am. Compl. at ¶ 56). She claims "[t]hese services were billed as group counseling services." (*Id.* at ¶ 57). According to Roycroft, "CDCAs may only (*sic*) perform group counseling services related to abuse of or dependency on and other drugs under supervision of certain professionals, including licensed professional clinical counsels, such as Roycroft." (*Id.* at ¶ 59). Roycroft does not allege whether CDCAs provided group services without supervision or, if so, why she failed to provide such supervision.

Roycroft alleges that in February 2009, she "learned" that group sessions were being used for snack time or "other non-therapeutic activities," or were being "billed" but not fully conducted. (Am. Compl. at ¶ 66-67). She alleges the "hour long group counseling session was frequently scheduled for 5:30 p.m. when dinner was at 6:00 p.m." (*Id.* at ¶ 77(a)). Roycroft also "learned" from an unnamed counselor that "closure groups" were allegedly not conducted, but that "progress notes were prepared reflecting the provision of these services." *Id.* ¶¶ 68-69. She

3

claims she "confirmed this with other [unnamed] employees at Abraxas" before resigning on

March 6, 2009. *Id.* She does not specify the content of any progress notes, allege whether those

notes were "tagged" for billing, or any identify any bill that was submitted to Medicaid for

"closure groups" that were not conducted.

> 2. Roycroft cites "examples" of alleged false claims which do not contain
> <u>any allegedly false content or link to the grievances she styles as "fraud."</u>

In an apparent effort to frame an "implied false certification" theory of liability under the

False Claims Act, Roycroft leaps from her grievances to an allegation that Defendants'

submissions to Medicaid "were false and fraudulent because Defendants had not provided all the

treatment services[ ] for which they were seeking reimbursement." (Am. Compl. ¶ at 70). She

alleges that Defendants used claims and codes and identification numbers through which they

"represented that they had provided specific types of treatment . . . [and b]y conveying this

information without disclosing Defendants' many violations of basic treatment services, staff and

licensing requirements for alcohol and drug addiction programs, Defendants' claims constituted

misrepresentations." (*Id.* at ¶ 71).

Roycroft purports to provide ten "examples of false claims" for "counseling services," all

of which were submitted on September 20, 2008—before any of the alleged improper conduct.

Roycroft does not attach the examples, identify the specific type of "counseling services" at

issue, compare the amount of counseling services performed with those submitted for payment,

identify which if any alleged regulatory violations made the submission fraudulent and how, or

otherwise describe how any of the claims are false or fraudulent. (Am. Compl. at ¶ 72).

Roycroft goes so far as to allege the "The Government" would not pay these claims but for

Defendants' supposed "illegal conduct," but Roycroft does not specify what Defendants did or

failed to do with respect to any one payment that was  illegal or how it was material to the

Government's decision to pay the claim, if it did.

        3.    **Roycroft's email excerpts show Defendants' efforts to accurately provide**
              <u>and document services.</u>

Roycroft's Complaint also quotes emails among the billing department, herself and the

Center's clinical director wherein Roycroft was asked to have her staff "finish tagging and

signing" notes from November 2008 so billing could be completed.  (Am. Compl. at ¶ 77(c)(1)).

Roycroft responded that she did what she could and sought clarification from the clinical director

as to how to proceed with other notes that were "unacceptable because they are cut and paste,

wrong topics, staff no longer here or woefully inadequate." (*Id.* at ¶ 77(c)(2)).  The clinical

director forwarded Roycroft's email to the Center's director and echoed Roycroft's concerns.

Roycroft does not allege how the situation was resolved or claim that any bills were

submitted from the "unacceptable" notes in November 2008.  Instead, she leaps to February

2009.  She cites an email in which the staff was congratulated for not having any missing notes

from February 4, 2009 and asked to "keep working on getting these missing notes done,

specially those over a month old."  (*Id.* at ¶ 77(c)(5)).  She also cites to an email from February

17, 2009, in which the clinical director requested a plan from Roycroft and others "to ensure that

the groups start on time and run the entire scheduled time" (*Id.* at ¶ 77(c)(6)) and emails seeking

prompt submission of notes to correct any inaccuracies. (*Id.* at ¶¶ 77(c)(7)-(8)).

    B.    **The Amended Complaint**

Roycroft filed her initial Complaint in this Court on August 15, 2014—over five years

after her resignation from the Center.  (Doc. 1).  On March 2, 2016, the United States declined to

intervene in the action, pursuant to 31 U.S.C. § 3730(b)(4)(B), giving the Roycroft the right to

continue the action for herself as a "qui tam" relator. The district court lifted the seal and ordered the Complaint served on March 3, 2016.  Roycroft amended the Complaint on July 19, 2016.

The Amended Complaint contains two counts.  Both counts allege violations of the False Claims Act ("FCA"), which was amended in on May 20, 2009 by the Fraud Enforcement and Recovery Act of 2009 ("FERA"), two months after Roycroft resigned from Abraxas.  At Count One, Roycroft attempts to bring claims for conduct allegedly occurring before the FERA amendments ("Pre-FERA claims").  She also attempts to state claims for conduct allegedly occurring after the FERA amendments ("Post-FERA claims").  As to her Pre-FERA claims, Roycroft recites then-existing 31 U.S.C. § 3729(a)(1) & (2) and alleges that "Defendant knowingly made, used, or caused to be made or used, false records of statements to get false or fraudulent claims paid or approved by the Government."  (Am. Compl. at ¶ 81).  As to her Post-FERA claims, Roycroft recites current 31 U.S.C. § 3729(a)(1)(A) & (B) and alleges that "Defendants knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claim."  (*Id.* at ¶ 82).  The Amended Complaint alleges that the Government "has paid and continues to pay such false claims that would not be paid but for Defendants' illegal conduct."  (*Id.* at ¶ 84.)

At Count Two, Roycroft attempts to state a "reverse false claim."  Reciting 31 U.S.C. § 3729(a)(1)(G) (2009), she alleges that "Defendants have knowingly and improperly avoided an obligation to pay money to the Government, including specifically Defendant's obligation to report and repay past overpayments of Medicaid claims for which Defendants knew refunds were properly due and owing to the United States Government."  (Am. Compl. at ¶ 89).

II.      **STATEMENT OF THE ISSUES**

      A.    Should Count I of the Amended Complaint be dismissed because it fails to meet the pleading standards under Federal Rules of Civil Procedure 8(a) and 9(b) and substantive requirements, including the "demanding" materiality requirement, for claims under the False Claims Act?

      B.    Should Count II of the Amended Complaint be dismissed because it fails to plead the elements of a "reverse false claim" and does not track the correct (pre-Fraud Enforcement and Recovery Act amendment) standard?

      *Suggested answer to both questions is "Yes."*

III.     **SUMMARY OF ARGUMENT**

    Roycroft's Amended Complaint should be dismissed because it fails to plead a violation of the False Claims Act with the degree of specificity required by Federal Rule of Civil Procedure 9(b).  Instead, the Amended Complaint relies on generalized grievances and sweeping allegations which are never tied to a specific claim to the government for payment.

    Count I of the Amended Complaint alludes to an "implied false certification" theory of liability but it fails to explain what, exactly, was falsely certified on any specific bill; it fails to allege how Abraxas' might have known any false claims were ever submitted (and actually undermines any such allegation); and it violates Supreme Court precedent requiring that alleged "false certifications" be material, which is a "demanding" standard.

    Count II of the Amended Complaint alludes to a "reverse false claim," but again fails to plead with specificity what, if any, obligation Abraxas failed to meet, what statement it allegedly used to avoid the obligation and how the statement was knowingly false.  Moreover, Roycroft predicates this claim on the wrong version of the FCA.  Accordingly, there is no merit to either Count of the Amended Complaint and both should be dismissed with prejudice.

IV.    **STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil procedure tests the sufficiency of the pleading. *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 5:13-cv-2145, 2015 WL 7575937, *3 (N.D. Ohio Nov. 25, 2015) (citation omitted).   On a motion to dismiss, the court accepts all allegations of fact by the non-moving party as true and construes them in the light most favorable to that party.  *Id.* (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).  The court, however, "need not accept as true legal conclusions or unwarranted factual inferences."  *Id.* (citations and quotations omitted).

To satisfy the pleading standard under F.R.C.P. 8(a)(2), a complaint must provide the defendant with "enough facts to state a claim to relief that is plausible"—not just conceivable—on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To be "plausible" a claim must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

"It is well settled that claims under the FCA must also satisfy the heightened pleading requirements of [Federal Rule of Civil Procedure] 9(b) by stating the circumstances surrounding the asserted fraud with particularity."  *Harper*, 2015 WL 7575937 at *3 (collecting cases).  Under Rule 9(b), claims of fraud "must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b).  In the context of an FCA case, the Sixth Circuit has held that the heightened pleading requirements of Rule 9(b) require an FCA complaint to set out, with respect to the specific bills submitted to Medicaid:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each

8

such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which the misled the [government], and (4) what the defendants obtained as a consequence of the fraud.

*Harper*, 2015 WL 7575937 at **3-4 (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006).  At minimum, "Rule 9(b) requires that the plaintiff specify the 'who, what, when, where and how' of the alleged fraud."  *Id.* (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).  Otherwise, an "FCA complaint that fails to comply with Rule 9(b)'s pleading requirements fails to state a claim under Rule 12(b)(6) and must be dismissed."  *Harper*, 2015 WL 7575937 at *4 (citing *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 564 (6th Cir. 2003).

V.      **ARGUMENT**

> A.      **Count I of The Amended Complaint Must be Dismissed Because Roycroft Fails to State a Claim or Sufficiently Allege that Abraxas Violated Sections 3729(a)(1) or (2) of the Pre-FERA FCA or the Post-FERA Version Thereof.**

To state a claim under the FCA, a plaintiff must sufficiently plead: (1) that the defendant made a false statement or created a false record (2) with actual knowledge, deliberate ignorance or reckless disregard of the truth or falsity of the information; (3) that the defendant submitted a claim for payment to the federal government ("Government"); and (4) that the false statement or record was material to the Government's decision to make the payment sought in the defendant's claim.  *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016).

> 1.      Roycroft fails the Sixth Circuit's pleading requirements for alleging False
>         Claims under Sections 3729(a)(1) and (2) and current versions thereof.

Roycroft cannot meet the Sixth Circuit's requirements for satisfying the FCA's heightened pleading requirements.  With respect to the first and third requirements above, there is "[a] clear and unequivocal requirement that a relator allege specific false claims when pleading a violation of the FCA."  *Sheldon*, 816 F.3d at 411.  This requirement derives from the fact that

"the [FCA] statute attaches liability, not to the underlying fraudulent activity or to the [G]overnment's wrongful payment, but to the 'claim for payment.'" *Id.* (citing *Sanderson*, 447 F.3d at 877-78). Plaintiffs alleging a "fraudulent scheme . . . must plead with specificity characteristic examples that are illustrative of the class of all claims covered by the fraudulent scheme." *Id.* (citations, quotations and brackets omitted). The FCA does not permit plaintiffs "merely to describe a private scheme in detail but then to allege simply that the claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Id.* (quoting *Sanderson*, 447 F.3d at 877).

Applying this reasoning, the courts in this Circuit have repeatedly rejected FCA claims which, similar to Roycroft's Complaint, air a series of grievances with no specific connection to a claim that was actually submitted for payment. *Sheldon*, 816 F.3d at 412; *United States ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 506 (6th Cir. 2008); *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 510-11 (6th Cir. 2007). While Roycroft's Complaint goes a step further than some complaints in that it purports to provide "examples" of fraudulent claims, it is a step in the wrong direction. Roycroft's examples do not link any of the claimed "fraud" to an actual claimed bill that was submitted to and paid by the Government. The courts have not been fooled by plaintiffs like Roycroft, who brandish their employer's bills as "examples" of fraudulent claims without citing any evidence of fraud on the bill. *See United States ex rel. Griffith v. Conn*, 117 F. Supp. 3d 961, 982-83 (E.D. Ky. 2015) (dismissing FCA claim alleging, among other things, that doctor signed and submitted 14 fraudulent forms, where "relators do not tie a false or fraudulent form from [the doctor] to a certain case"); *U.S. ex rel. Prather v. Brookdale Senior Living*, No. 3:12–CV–00764, 2015 WL 1509211 (M.D. Tenn. Mar.

10

31, 2015) ("It is insufficient for Prather to name a patient and state 'Medicare was billed.' This statement could be made about any (and every single) patient treated.").

In *Prather*, the relator plaintiff's complaint alleged personal knowledge of numerous issues regarding her employer's provision of services and processing of Medicare claims.  The plaintiff alleged that these issues caused the employer's billings to Medicare to be "inconsistent with the care actually provided to the patient."  *Id.* at *6.  The complaint also referenced eleven patients, identified as Patients A-K, for whom the plaintiff listed the location and nature of the treatment received (including unspecified "therapy"), dates of care, and plan of care.  *Id.* at *13. She also implied that bills were submitted to Medicare.  *Id.*

The court dismissed the complaint with prejudice for lack of specificity under Rule 9(b). As to "Patients A-K," the court found that "despite referencing, in boilerplate fashion, 'Medicare billing,' for none of these patients does [plaintiff] allege any specific claim that was submitted to Medicare for payment (including the basis of such claim, date of such claim, any amount billed in such claim, or any amount paid on such claim)."  *Id.* at * 14.  Moreover, while the plaintiff alleged numerous improprieties, she failed to connect these to any alleged fraud or to specify the "who, what, where, when, and how" of  a fraud claim.  *Id.* at *15.   As such, the complaint was "little more than an aggregation of generalized grievances" as distinguished from a plausible claim to relief under 31 U.S.C. §§ 3729(a)(1)(A) or (B).  *Id.* at *14.

As the *Prather* court makes clear, FCA plaintiffs "cannot escape a motion to dismiss on the *presumption* alone that a false claim may, likely was, or even must have been presented to the [G]overnment as part of an overarching nefarious scheme."  *Id.* at *15 (citing *U.S. ex rel. Dennis v. Health Mgmt. Assocs., Inc.*, No. 3:09–cv–00484, 2013 WL 146048, at *14 (M.D. Tenn., Jan.14, 2013) (dismissing FCA/Medicare "complaint focused almost exclusively, and

11

superficially, on the allegedly fraudulent activity—making only very general and conclusory allegations regarding the submission of specific claims by the defendants"); *U.S. Ex. Rel. Doe v. Jan-Care Ambulance Serv.*, --- F. Supp. 3d ---, 2016 WL 2843909, *3 (E.D. Ky. May 11, 2016) (dismissing "false certification" theory where plaintiff failed to link alleged contract violations to an actual claim and noting the defendant "could have submitted the allegedly fraudulent claims . . . the next month, or the next year. Or perhaps . . . never").

Roycroft's Complaint closely resembles the "implied certification" complaints that have been dismissed under Rules 9(b) and 12(b)(6) for lack of specificity.  Despite its length, the complaint boils to down to three categories of grievances, none of which are specifically tied to the content of any claim that was actually submitted to and paid by the Government.  *See U.S. ex rel. Antoon v. Cleveland Clinic Found.,* 788 F.3d 605, 611 (6th Cir. 2015) (affirming dismissal of 569 paragraph FCA complaint).  Roycroft's 10 "examples" of allegedly fraudulent claims, like the 11 examples in *Prather* and 14 examples in *Griffith*, are insufficient.  Like the vague "therapy" bills alleged in *Prather*, the vague "counseling services" bills alleged here do not identify any inconsistently-billed services, how the services at issue were fraudulent, how much payment was requested, how much was granted, or who if anyone paid.  Like the missing link in *Jan-Care*, there is a missing link here between allegedly shortened counseling sessions (or other supposed contractual violations) and any bills allegedly submitted for those specific sessions.

Apart from the failed "examples," Roycroft's only other allegation that fraudulent claims were submitted is that she "confirmed" with unnamed employees that progress notes were being completed for "closure group" counseling that was not conducted.  As the Amended Complaint alleges, however, progress notes must be "tagged" before they could be submitted *for payment*, and Roycroft admits that she reviewed progress notes to "ensure" they were compliant.  (Am.

Compl. at ¶¶ 59 77(c)(1),(4)).  Roycroft cannot, and does not, allege that the allegedly-faulty

progress notes were tagged for approval and submission, particularly since she was responsible

for tagging.  Thus, even if Roycroft's allegations are true, they mean nothing unless specific

progress notes were fraudulently tagged, converted to a claim for payment and actually

submitted to Medicaid.  Roycroft makes no such allegations and provides no such detail, as she

must under Rule 9(b).[1]  *See Jan-Care*, 2016 WL 2843909 at *3.  In short, Roycroft has not pled

facts that allow Defendants to answer her conclusory allegations of fraud and, as in *Prather*, her

Amended Complaint amounts to a series of internal "grievances" and nothing more.

        2.     <u>Roycroft pleads herself out of court by attempting to allege "knowledge."</u>

As a separate and independent ground for dismissal, Count I must be dismissed because

Roycroft pleads no facts plausibly and specifically alleging that any of the numerous Defendants

knew about the supposed "scheme" to defraud the Government.  In her attempt to plead this

requirement, Roycroft pleads herself out of court.   The emails she quotes, even in the most

favorable light imaginable, do not show knowledge of fraudulent bills *being submitted* to and

paid by the Government.  They show, as Roycroft admits, "discussions regarding the progress

note issues" and efforts to ensure such notes were complete <u>*prior to*</u> submission to billing.  *See,*

*e.g.*, Compl. at ¶ 77(c)(4)  (noting that incomplete notes were "holding up billing").  Similarly,

the emails regarding counseling sessions do not show that the alleged shortened counseling

sessions were submitted for payment as full sessions.  *Id.* at ¶¶ 76; 78.  If anything, the email

from the Center's director instructing *Roycroft*, among others, to make sure counseling sessions

---

[1] Roycroft did not—and cannot—plead for a "relaxed" approach to the Sixth Circuit's requirement for specific examples of fraudulent claims.  To request that approach, she would need to present "extreme detail" or "great personal knowledge" of facts compelling the conclusion that false claims were submitted.  *Prather*, 2015 WL 1509211 at n.6.  Roycroft's allegations do not approach that type of detail and do not allege personal knowledge of any claims that were submitted.  *Id.*

13

were not shortened demonstrates that Roycroft was responsible for the allegedly incorrect

reporting from which she now seeks to benefit.  *Id.* at ¶ 76.

### 3. The Amended Complaint Violates Supreme Court Precedent Requiring FCA Plaintiffs to Specifically Plead Facts Demonstrating Materiality.

A third, separate and independent reason Roycroft's Count I fails is that Roycroft has not

pled facts establishing that the alleged fraudulent statements or omissions were material to the

Government's decision to pay.   Although "materiality" was not added as a statutory requirement

to Section 3729(a)(1)(B) until 2009, it has been required element of FCA claims both before and

since the 2009 FERA Amendments.  *United States ex rel. Am. Sys. Consulting, Inc. v. Mantech

Advanced Sys. Int'l*, 600 Fed. Appx. 969, 973 (6th Cir. 2015).

"The materiality standard is demanding," and for a good reason: the FCA "is not 'an all-

purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or

regulatory violations." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S.

___, slip op. at 15 (2016).   It punishes only specific, material misrepresentations that defraud the

Government.  *Id.*  Accordingly, it is incumbent on plaintiffs "to plead their claims with

plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance,

pleading facts to support allegations of materiality." *Id.* at slip. op. 16-17 n.6.  The facts, if

alleged, must allow "no one [to] say with reason" that the Government would have paid if its

agents knew of the alleged misrepresentations.  In FCA cases, materiality is a question of law for

the court to decide.  *Am. Sys. Consulting*, 600 Fed. Appx. at 973.

Roycroft has not adequately pled materiality as a matter of law.  Her complaint makes a

few conclusory allegations, i.e., that unspecified claims "would not be paid but for Defendants'

illegal conduct"; that "Defendants had knowledge of the materiality of the above-described

statutory, regulatory and contract requirements," and that "Defendants knowingly made, used, or

caused to be made or used false records or statements material to false or fraudulent claims."
(Am. Compl. at ¶¶83, 77, 86, respectively).  These allegations are insufficient under *Escobar*.
*See United States ex rel. Dresser v. Qualium Corp.*, 2016 WL 3880763 (N.D. Cal. Jul. 18, 2016)
(granting motion to dismiss because complaint alleged merely that "the [G]overnment would not
have paid Defendants' claims had they known of Defendants' fraudulent conduct").    In lieu of
specific material facts, they simply suggest that all "statutory, regulatory, and contractual"[2]
provisions cited in the Amended Complaint are material.  That is precisely the outcome rejected
in *Escobar*, slip op. at 17.  Thus, Count I may be dismissed on this ground alone.

4.  Roycroft's Post-FERA claims are frivolous.

Where Roycroft's Pre-FERA claims under Count I are insufficient to survive a motion to
dismiss, her Post-FERA claims under Count I are frivolous.  Roycroft does not allege a single
incident occurring after the May 2009 Amendments which could form a basis for extrapolating
her claims beyond March 6, 2009 (at the latest), when she resigned from Abraxas.  Her bald
allegation that the Government "continues to pay such false or fraudulent claims" is vague and
conclusory and unable to nudge her claim across the line from conceivable (if that) to plausible.

B.  **Count II of the Amended Complaint Must Be Dismissed Because Roycroft Fails to Sufficient Plead Essential Elements of a "Reverse False Claim"**

Count II of Roycroft's Amended Complaint alleges a "reverse false claims" theory under
31 U.S.C. § 3729(a)(1)(G) of the FCA, which punishes anyone who  "knowingly makes, uses, or
causes to be made or used, a false record or statement material to an obligation to pay or transmit
money or property to the Government, or knowingly conceals or knowingly and improperly
avoids or decreases an obligation to pay or transmit money or property to the Government."  *Id.*
Roycroft's allegation merely echoes this statutory language and slips-in a conclusory statement

---

[2] The Amended Complaint does not explicitly allege any contractual requirements or breaches.

15

that Defendants improperly avoided an obligation to pay money to the Government, including specifically Defendants' obligation to report and repay past overpayments of Medicaid claims for which Defendants knew refunds were properly due and owing to the United States Government." (Am. Compl. ¶ at 89).

Roycroft fails to approach the heightened pleading requirements or substantive requirements for a reverse false claim.  A reverse false claim is still predicated on fraud and, therefore, must be pled with specificity; however, it differs from the traditional FCA claim because it involves fraudulent action designed to *avoid having to pay* the Government rather than fraudulently presenting a false claim to the Government.  *Harper*, 2015 WL 7575937 at *8 (emphasis added).   Thus, to plead a reverse false claim, a plaintiff must allege facts showing (1) that the Defendants actually made, used or caused to be used a statement or record to conceal, avoid or decrease an obligation to the United States; (2) that the statement or record was false or fraudulent; (3) that the Defendants knew the statement or record was false or fraudulent; and (4) that the Defendants "made a false record or statement at a time that the defendant owed to the Government an obligation sufficiently certain to give rise to an action of debt at common law. *American Textile Mfrs. Inst., Inc. v. The Limited, Inc*., 190 F.3d 729, 737 (6th Cir.1999).

Roycroft does not allege any facts that Defendants actually "made, used or caused to be used a statement or record to conceal, avoid or decrease an obligation to the United States."  She does not allege facts identifying or explaining the source of the supposed "obligation," such as a breach of contract (or what contract was breached and how).  She does not identify any "false record or statement" allegedly made "at a time that the defendant owed to the [G]overnment" any obligation to transmit money.  Nor does she alleged any facts, which if believed, would

16

explain how Defendants' knew what false statements were being made, or who made them, in order to avoid a payment owed to the Government.

Finally, Roycroft cannot argue that the post-FERA version of the FCA applies to her reverse false claim allegations.[3]  As referenced above, Roycroft's employment with Abraxas ended on March 6, 2009 and she does not make a single factual allegation of misconduct—let alone misconduct tied to avoiding payments—occurring after the May 2009 FERA amendments. As a result, Roycroft's reverse false claim allegations are governed by the pre-FERA standards articulated above.  Still, even if Count II were not governed by the pre-FERA FCA, Roycroft's claim would fail to meet the pleading requirements of the post-FERA FCA because Roycroft has not "come forward with factual allegations that, if believed, would support [her] conclusory allegation that [Defendants] . . . knowingly and improperly avoided or decreased an obligation" to pay the Government.  *Harper*, 2015 WL at 7575937 at *9 (analyzing differences between pre- and post-FERA reverse false claims and dismissing plaintiff's complaint under the post-FERA analysis).  Accordingly, Count II must be dismissed.

VI.    **CONCLUSION**

For any and all of the foregoing reasons, Defendants respectfully request that the court DISMISS Relator Plaintiff's First Amended Complaint with prejudice.

Respectfully submitted

 /s/ *Peter J. Ennis*
Peter J. Ennis

---

[3] As this court has explained, FERA modified the scope of reverse false claims in two important ways. First, FERA eliminated the requirement that a person make or use a false record or statement to avoid, conceal, or decrease an obligation to the United States.  Second, FERA broadened the term "obligation" by defining it as "an established duty, whether or not fixed, arising from an express or implied contractual, guarantor-grantee, or licensor-licensee relations, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." *Harper*, 2015 WL 7575937at *8 (citing 31 U.S.C. § 3729(b)(3)).